DECISION
Before this Court is the appeal of the plaintiffs, Ronald and Petie Rodriguez ("Appellants" or "Rodriguezes") from a decision of the New Shoreham Zoning Board of Review ("Zoning Board") upholding a Notice of Violation. This Court possesses jurisdiction pursuant to G.L. § 45-24-69 (d).
 Facts/Travel
The appellants are owners of real property located in the Town of New Shoreham. On December 8, 1995, the appellants applied for a building permit for a garage/barn on their property. See
Exhibit 1: Building Permit Application, Dec. 8 1995. Prior to approval and based on plans submitted by the appellants, the Building Official, Mr. Tillson calculated the average height of the building in relation to the original mean grade of the land to be 24.88 feet, within the twenty-five foot height restriction pursuant to Section 306 of the New Shoreham Zoning Ordinance. Exhibit 1, Transcript of September 23, page 5, lines 17-15. On December 14, 1995, the appellants' application was approved and they were issued a building permit for a garage and storage use building.[1]
The record discloses that after construction began on the second story of the building, Mr. Tillson started receiving phone calls from neighbors complaining that the appellant's building "looked like it was over twenty-five feet." Transcript of September 23, 1995, Page 6. After visiting the site on July 11, 1998 and conducting field measurements Mr. Tillson arrived at a "measured guess" of the original grade of the land and concluded that the average building height was 27.5 feet. See Exhibit 5; Transcript of September 23, 1996, Pages 7-8. As a result, Mr. Tillson issued a Notice of Violation ("NOV") for height restriction violations citing sections 306 (c) and 202 (a)(22) of the New Shoreham Zoning Ordinance.[2]
On September 23, the Rodriguezes requested a hearing to appeal the Notice of Violation. Testimony was produced from Mr. Tillson regarding his method for determination of the original grade and basis for the issuance of the Notice of Violation. Also testifying was Mr. Kirk Andrews, a professional land surveyor, who was hired by the Rodriguezes after the NOV was issued. He determined the original mean grade of the property on which the building was located and the average height of the building. Mr. Andrews' professional survey concluded that the average height of the building in relation to the original mean grade of the land was 23.4 feet.
On October 28, 1996, the Zoning Board issued its decision upholding the Notice of Violation against the appellants, accepting the measurements of Mr. Tillson over the professional calculations performed later by Mr. Andrews.
The appellants appeal from the upholding of the Notice of Violation arguing that the Building Official had failed to meet his burden of proof with respect to the violation, and that the decision of the Zoning Board was clearly erroneous.
 Standard of Review
The review of a zoning board decision by this Court is controlled by R.I.G.L. § 45-24-69 (d) which provides:
 "(g) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The Court may affirm the decision of the zoning board of review or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, this section precludes a reviewing court from substituting its judgment for that of a zoning board in regard to the credibility of witnesses or the weight of the evidence concerning questions of fact. Costav. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988);Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Board's decision. Newport Shipyard v. Rhode Island Commission forHuman Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sandand Gravel Co., 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently from the zoning board. Berberian v. Dept. of Employment Security,414 A.2d 480, 482 (R.I. 1980).
 Analysis
The foundation of the Rodriguezes' appeal lies in the method of determination by the Building Official, Mr. Tillson of the original mean grade of the land on which the appellants' property is located and the average building height. The appellants assert that the Zoning Board's decision which relied on Mr. Tillson's "eyeballing" over the calculations conducted by Mr. Andrews is clearly erroneous and warrants reversal.
The Zoning Board maintains that the decision upholding the NOV is not clearly erroneous and is supported by evidence in the record. In its decision that Zoning Board concluded that the measurements taken by Mr. Tillson were more consistent with those noted in the original plans, that the continued altering of the landscape significantly interfered with Mr. Andrews' ability to determine the original grade, and that Mr. Tillson is a professional in the field of building inspection and has experience in the building trade. Based on a site visit by the Board and the aforementioned reasons, the Board concluded that Mr. Tillson's calculations were more likely to be accurate than Mr. Andrews.
Section 306 (C) of the New Shoreham Zoning Ordinance provides that the maximum height for an accessory structure is twenty-five feet. Building height is defined in the ordinance by section 202 (a)(22) as "the actual vertical distance from the mean existing grade to the highest point of the building or other structure, excluding chimneys, where mean existing grade is defined as the mean elevation of the natural ground adjoining the building or other structures on all sides."
By its very nature, the building height restriction mandates a precise, objective calculation of building height prior to approval of a building permit. As a result, the building height requirement can neither be met nor a building permit obtained by submitting a ballpark figure or an estimate. Such an ordinance, particularly through its use of the words "actual vertical distance," requires that a judgment be made mathematically of the mean existing grade and the highest point of the building in order to determine compliance or noncompliance. The only way for the Building Official to ensure compliance is by precise measurement.
The record, however, reveals that the figures given by Mr. Tillson in support of his Notice of Violation are supported by a "measured guess," contrary to the requirements as set forth by the ordinance. The transcript states that on July 11, 1996, Mr. Tillson had visited the site and had measured the building doing "a quick sketch which shows, in my opinion, the original grade." Transcript, Sept. 23, 1996 Page 6. He also noted that in arriving at a final average height of 27.5 feet he measured the building on all four sides and divided by four. Yet Mr. Tillson admitted at he hearing that "[b]efore the excavation started I did not go out and actually establish the mean grade points," and that his calculations were "a measured guess." Transcript, Sept. 23, 1996, Page 7, 8.
The transcript of the September hearing also indicates that when asked by the appellants' counsel how Mr. Tillson, with precision, would establish the height of a building in relation to the original natural grade he responded that he "would have a registered land surveyor establish the elevation of the original grade based on the nearest place where there still is an original grade and . . . calculate your mean distance . . . ." Mr. Tillson agreed that this method would be best; instead of "simply eyeballing the way that [he] did at the time [he] issued the Notice of Violation." Transcript, Sept. 23, 1996, Page 10.
Furthermore, Mr. Tillson testified at the close of the hearing that he still did not know the actual vertical distance of the appellants' building stating "I would have to say it is still my opinion that building is over twenty-five feet. By how much I don't know." Transcript, Sept. 23, 1996, Page 23.
Despite the Zoning Board's assertion that the elevations submitted by Mr. Tillson appeared consistent with those on the original plans, the exhibits in the record show that the later field measurements conducted by Mr. Tillson are less consistent with the original plan calculations resulting in a +4.5' height difference on the north and south sides of the building and a total vertical difference of +2.62'.[3]
Although a Zoning Board is left to assess the credibility and weight of the testimony and may reject the testimony of experts, the Court can determine that a witness is not qualified as an expert or may determine that an expert's opinion is not predicated upon facts that are legally sufficient to form a basis for his conclusion, thus disregarding the testimony of a proposed expert as incompetent. Salve Regina v. Zoning Bd. of Review,594 A.2d 878, 881-882 (R.I. 1991), Gorham v. Public BuildingAuthority, 612 A.2d 708, 717 (R.I. 1992), Ferland Corp. v.Bouchard, 626 A.2d 210, 215-216 (R.I. 1993). "Opinion evidence has probative force when such evidence is the product of expertise applied to a given set of facts." Marks v. Zoning Board ofReview, 102 R.I. 545, ___, 232 A.2d 382, 385 (1967). An opinion that is not supported by factual data to which such an opinion can be related is a mere assertion and lacking in probative force." Id. See also Coupe v. Zoning Bd. of Review of the City ofPawtucket, 104 R.I. 58, 60, 241 A.2d 821, 823 (1968); Sweet v.Murphy, 473 A.2d 758, 760-761 (R.I. 1984).
In light of the testimony in the record presented by Mr. Tillson, this Court finds that the building official failed to determine the "actual vertical distance" as required by the wording of the town ordinance prior to issuing the Notice of Violation against the defendants. The opinion of the Building Official that the appellants were in violation of the height restriction is not predicated upon facts or calculations that are legally sufficient to form the basis for his conclusion. SeeGorham, 612 A.2d at 717 (holding that reliance on appraiser's valuation of real estate which was purely speculative and based on conjecture was clearly wrong). As a result, this Court finds that the testimony of the building official is incompetent and lacking in probative force. For the same reasons, the observations of the Board at its site visit are lay judgments without any mathematical support and have little probative force.Compare Smith v. Zoning Board of Review of City of Warwick,103 R.I. 328, 334-335, 237 A.2d 551, 555 (1968)(holding that Board can rely on own subjective knowledge of commercial area). As a result, the only remaining testimony with respect to the mean grade of the land and building height is that provided by Mr. Andrews.
The Zoning Board reasoned that because the appellants continued to alter the landscape around the building, the further removal of earth interfered with Mr. Andrews' ability to accurately reconstruct the grade before construction. However, there is no evidence that Mr. Andrews was unable to reconstruct the original grade. Rather Mr. Andrews testified that ". . . [I] took elevations on the original grades all around the building before it was disturbed. The grade that was still original is undisturbed." Transcript, Sept. 23, 1996, Page 13. When asked by a Zoning Board member how Mr. Andrews reconstructed the contours after they had been destroyed, Mr. Andrews indicated that in a number of places "[i]t's still original," and that just as when gravel is excavated, contours and quantities are figured, with an overall margin of error of plus or minus one-half percent. Transcript, Sept. 23, 1996, Page 19-20.
This Court finds that the Board's decree that Mr. Andrews was unable to determine the original grade after Mr. Tillson's field measurements is unsupported by the evidence in the record. As discussed previously, because the testimony of Mr. Tillson is lacking in probative value the testimony of Mr. Andrews remains essentially uncontradicted. Such testimony, well-grounded in precise mathematical computation, demonstrates that the actual vertical building height pursuant to Sections 306 (c) and 202 (a)(22) of the New Shoreham Zoning Ordinance is 23.4 feet and within the 25 foot height restrictions imposed thereby.
The decision of the Zoning Board upholding the Notice of Violation issued by the Building Official for a violation of the height restrictions of the Town of New Shoreham is hereby reversed. Counsel shall prepare an appropriate order for entry in accordance with this decision.
[1] In particular, the building permit issued by Mr. Tillson grants permission to construct a "new accessory use building . . . [used as] garage and storage only. Not to be used for human habitation." See Exhibit 2.
[2] Further discussion at the hearing also suggested a potential violation with respect to the use of the building as living quarters in violation of the permit. However, the final decision of the Zoning Board from which the appellants appeal to this Court is limited only to the height restrictions cited in the Notice of Violation.
[3] Mr. Andrews' measurements indicated that the building height from the top of the foundation to the peak was 24.7', a difference of +.5" from the original plans. Using a different calculation method Mr. Andrews arrived at a -1'3" total difference in vertical building height.